UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

IN RE:

| | |
|---|---|
| **SLOUGH, SHARON F.,** | Case No. 03-10520-8-JRL |
| **Debtor.** | Chapter 7 |

___

| | |
|---|---|
| **BRENDA WATTS,** | |
|     **Plaintiff,** | |
| v. | Adversary Proceeding |
| | No. L-04-00015-8-JRL |
| **SHARON SLOUGH and STEPHEN H. SLOUGH,** | |
|     **Defendants.** | |

| | |
|---|---|
| **BRENDA WATTS,** | |
|     **Plaintiff,** | |
| v. | Adversary Proceeding |
| | No. L-04-00142-8-JRL |
| **SHARON F. SLOUGH and STEPHEN H. SLOUGH,** | |
|     **Defendants.** | |

| | |
|---|---|
| **BRENDA WATTS** | |
|     **Plaintiff,** | |
| v. | Adversary Proceeding |
| | No. L-04-00158-8-JRL |
| **SHARON SLOUGH, STEPHEN H. SLOUGH, individually and as Trustee, BRIAN K. SHEETS, and JEFFERY L. SHEETS,** | |
|     **Defendants.** | |

___

## **ORDER**

These cases are before the court on Brenda Watts' Motion for Summary Judgment on the

Securities Act Claims in Adversary Proceeding No. L-04-00158-8-JRL and the Trustee's Motion for Summary Judgment on the Fraudulent Transfer Claims in Adversary Proceeding Nos. L-04-00158-8-JRL and L-04-00015-8-JRL.[1] On August 16, 2005, the court conducted a hearing on these matters in Wilmington, North Carolina.

At the hearing, the parties announced that Watts' Motion for Summary Judgment on the Securities Act Claims had been resolved by agreement. The court therefore turned to the Trustee's Motion for Summary Judgment on the Fraudulent Transfer Claims.

## UNDISPUTED FACTS

The following undisputed facts pertain to the motion for summary judgment on the fraudulent transfer claim, pursuant to N.C. Gen. Stat. § 39-23.5, in the case transferred from Cabarrus County Superior Court (Adversary Proceeding No L-04-00158-8-JRL):

1.On May 17, 2000, Brenda Watts invested $243,000.00 in nine bundles of Global Telelink Services, Inc., ("GTS") telephone switch equipment, also known as "Packet Gateway Systems," through Sharon Slough. This was a sale-leaseback arrangement, whereby Watts purchased the equipment and leased it back to GTS. At the end of the lease, GTS was to buy back the equipment from Watts. Watts received $16,569.50 in distributions from this investment. Thereafter, GTS closed its doors and was sued by the Securities Exchange Commission for operating a ponzi scheme.

2.On May 23, 2001, Sharon Slough executed a deed to her home located on 6224

---

[1] The court notes that, while the Trustee filed his motion in all three of the above-captioned adversary proceedings, he is only moving for summary judgment on the fraudulent transfer claims in the cases transferred from Cabarrus and Brunswick Counties (Adversary Proceeding Nos. L-04-00158-8-JRL and L-04-00015-8-JRL).

Miller Road, Kannapolis, North Carolina ("Miller Road Property") to her two sons, Brian K. Sheets and Jeffery L. Sheets. The deed recites that the transfer was made "for valuable consideration of five and 00/100ths ($5.00) Dollars, love and affection." The sons helped their late father build the home. No actual monetary consideration was paid by the sons at the time of the transfer. Sharon Slough warranted that the property was unencumbered.

3.      The debtor had a net worth of approximately $78,955.00 prior to the transfer of the Miller Road Property, and a net worth of approximately -$145,975.00 after the transfer of the property.[2]

4.      On July 9, 2001, Brian K. Sheets and Jeffery L. Sheets executed a deed to the Miller Road Property to Stephen Slough as trustee. The deed recites "for valuable consideration of Five and 00/100 Dollars ($5.00) love and affection." Brian and Jeffery Sheets warranted that the property was unencumbered.

5.      The "Irrevocable Trust Agreement," executed July 13, 2001, provides that the two sons are the grantors and beneficiaries of the trust.

---

[2]The analysis of the debtors' assets and liabilities is based upon the debtor's interrogatory responses, dated October 22, 2002, and deposition testimony provided on October 1, 2003. The debtor attempted to raise an issue of fact regarding insolvency by filing an affidavit on August 12, 2005 in Adversary Proceeding No. L-04-00015-8-AP. While the debtor failed to file her affidavit in Adversary Proceeding No. L-04-00158-8-JRL, the court considered the affidavit in that case, as the trustee's joint motion for summary judgment was filed in all three of the above-captioned adversary proceedings. The information regarding the valuation of assets and liabilities in the debtor's affidavit and accompanying attachment directly conflicts with the information provided by the debtor in the interrogatory responses and deposition. The affidavit provides no explanation for the disparity in values. The debtor cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting her previously sworn statements. Barwick v. Celotex Corporation, 736 F.2d 946, 959 (4th Cir. 1984).

6. After the transfers occurred, Sharon and Stephen Slough continued to pay the mortgage, insurance, and taxes on the Miller Road Property out of their joint checking account.

7. On March 28, 2002, Watts filed suit against Sharon Slough, Stephen Slough, Brian K. Sheets, and Jeffery L Sheets and a Notice of Lis Pendens in Cabarrus County Superior Court.

8. On December 27, 2002, Cabarrus County Superior Court Judge Clarence E. Horton, Jr., entered summary judgment in favor of Watts on the first and second claims for relief for violations under the North Carolina Securities Act, pursuant to N.C. Gen. Stat. §§ 78A-24, 78A-36(a), and 78A-56(a), in the amount of $243,000, plus interest at the rate of 8% per annum from May 17, 2000, until paid, costs and reasonable attorney's fees, less the income Watts received from her investment in the amount of $16,569.50. Judge Horton entered summary judgment in favor of the Defendants on Watts' fourth and seventh claims for relief (breach of fiduciary duty and negligent misrepresentation, respectively).

9. On October 7, 2003, Watts filed a motion for summary judgment on her fraudulent transfer claim, pursuant to N.C. Gen. Stat. § 39-23.5, and an amendment to that motion on October 13, 2003. This is the eighth claim for relief in the complaint.

10. On October 20, 2003, Cabarrus County Superior Court Judge Susan C. Taylor conducted a hearing on Watts' motion for summary judgment on the fraudulent transfer claim. The parties were represented by counsel at the hearing. The court heard arguments in the morning and then took a recess for lunch. Following the recess, Judge Taylor announced that Watts was entitled to summary judgment on the fraudulent transfer claim. The defendants' counsel then informed the court that Sharon Slough had filed bankruptcy during the court's recess. Judge Taylor determined that the bankruptcy filing stayed all further state court proceedings.

11.     The case was transferred to this court on July 29, 2004.

The following undisputed facts pertain to the motion for summary judgment on the fraudulent transfer claim, pursuant to N.C. Gen. Stat. § 39-23.5 and/or § 39-23.4, in the case transferred from Brunswick County Superior Court (Adversary Proceeding No L-04-00015-8-JRL):

1.      On May 17, 2000, Brenda Watts invested $243,000.00 in nine bundles of GTS telephone switch equipment, also known as "Packet Gateway Systems," through Sharon Slough. This was a sale-leaseback arrangement, whereby Watts purchased the equipment and leased it back to GTS. At the end of the lease, GTS was to buy back the equipment from Watts. Watts received $16,569.50 in distributions from this investment. Thereafter, GTS closed its doors and was sued by the Securities Exchange Commission for operating a ponzi scheme.

2.      Sharon Slough and her mother, Mary B. Foil, owned a condominium unit located in North Myrtle Beach, Horry County, South Carolina ("Verandas Condominium"). At the time, the unit was unencumbered.

3.      On April 16, 2001, Sharon Slough and Mary B. Foil executed a deed to the Verandas Condominium to Sharon Slough and Stephen Slough. The deed confusingly recites that the transfer was for the sum of "Five and 00/100 Dollars ($500.00) and love and affection."

4.      On October 25, 2002, Sharon and Stephen Slough executed documents for a mortgage loan on the Verandas Condominium. Sharon and Stephen Slough instructed Waccamaw Bank to deposit $240,000 into an account designated by them and to pay the additional $2,400 loan origination fee.

5.      On October 30, 2002, Sharon and Stephen Slough purchased real property in Sunset Beach, Brunswick County, North Carolina ("Sea Trail Plantation Property"). The Sloughs financed the purchase

through the loan obtained from Waccamaw Bank secured by a mortgage on the Verandas Condominium.

6. On November 8, 2002, the Sloughs obtained a second loan from Waccamaw Bank. They executed an Equityline Agreement, which provided a $100,000 line of credit secured by a deed of trust on the Sea Trail Plantation Property. The Sloughs used this line of credit for home improvements.

7. On January 16, 2003, Brenda Watts filed a Notice of Lis Pendens in the Court of Common Pleas, Horry County, South Carolina.

8. On January 28, 2003, Watts filed a Notice of Lis Pendens and an Application and Order Extending Time to File Complaint in Brunswick County Superior Court.

9. On February 3, 2003, Brenda Watts filed suit against Sharon and Stephen Slough in the Court of Common Pleas, Horry County, South Carolina. The trustee removed that case from Horry County to the U.S. Bankruptcy Court for the District of South Carolina. On July 6, 2004, the case was transferred to this court.

10. On February 3, 2003, Sharon Slough, Stephen Slough, and Mary B. Foil executed a "Corrective Title to Real Estate" as to the Verandas Condominium. It stated that the amount of consideration in the deed executed on April 16, 2001 was incorrect due to a scrivener's error and that the deed should have stated as consideration "Twenty-Five Thousand and 00/100 Dollars ($25,000.00)."

11. On February 4, 2003, Watts filed a complaint in Brunswick County Superior Court against Sharon and Stephen Slough. On January 14, 2004, the trustee removed the case from Brunswick County to this court.

**STANDARD OF REVIEW**

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962).

## ANALYSIS

### Fraudulent Transfer Claim (Adversary Proceeding No. 04-00158-8-JRL)

In the case transferred from Cabarrus County, the court addresses the trustee's motion for summary judgment on the eighth claim for relief—the fraudulent transfer claim, pursuant to N.C. Gen. Stat. 39-23.5. The court finds that the law of the case doctrine applies here. Under the law of the case doctrine, "a court should not reopen issues decided in earlier stages of the same litigation." Agostini v. Felton, 521 U.S. 203, 236 (1997); Columbus-America Discovery Group v. Atl. Mut. Ins. Co., 203 F.3d 291, 304 (4th Cir. 2000)(stating "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case"). Thus, once a case is removed from federal to state court, "the law of the case doctrine preserves any prior rulings by the state court in that case." Dow v. Jones, 311 F. Supp. 2d 461, 465 (D. Md. 2004). The doctrine "presumes a hearing on the merits," U.S. v. Hatter, 532 U.S. 557, 566 (2001), and it would not apply "if the court is convinced that [its prior decision] is clearly erroneous and would work a manifest injustice." Agostini, 521 U.S. at 236. It also would not apply where there has been an intervening change of controlling law or new evidence has been discovered. Binkley v. Loughran, 714 F. Supp. 776, 778 (M.D.N.C. 1989); *see also* Dow, 311 F. Supp. 2d at 465 (doctrine does not apply where parties have "presented new evidence or new arguments, or if

7

the prior ruling is legally erroneous"). According to the Fourth Circuit, the doctrine "is not a matter of rigid legal rule, but more a matter of proper judicial administration which can vary with the circumstances." Hill v. BASF Wyandotte Corp., 696 F.2d 287, 290 n.3 (4th Cir. 1982).

It is sound policy to apply the law of the case doctrine here. On October 20, 2003, Cabarrus County Superior Court Judge Susan C. Taylor conducted a hearing on Watts' motion for summary judgment on this same fraudulent transfer claim. The parties were represented by counsel and had the opportunity to present their arguments before the state court judge. After taking a lunch recess, Judge Taylor orally granted Watts's motion for summary judgment on the fraudulent transfer claim; however, the defendants' counsel informed the court that Sharon Slough had filed for bankruptcy relief during the recess. For this reason, Judge Taylor never reduced her judgment to writing. As a mechanism for promoting judicial economy and as a means of deterring forum shopping, the law of the case doctrine should be enforced under these circumstances.

The defendants, however, contend that they have provided new evidence or new argument regarding whether Sharon Slough was "insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." On August 12, 2005, two business days prior to the hearing on the motion for summary judgment, Sharon Slough filed an affidavit including an attachment that provides a breakdown of Sharon Slough's assets and liabilities as of May 23, 2001—the time Sharon Slough transferred the subject property to her sons. This valuation of assets and liabilities contradicts information that Sharon Slough provided in her answers to interrogatories provided on October 22, 2002, and her deposition testimony provided on October 1, 2003. The debtor gives no explanation in the affidavit to resolve this disparity. The Circuits are virtually unanimous in holding that a party cannot create a genuine issue of material fact

8

sufficient to defeat summary judgment by providing an affidavit that contradicts her previously sworn statements without giving a sufficient explanation regarding the disparity. Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994); Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2nd Cir. 1996); Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir. 1991); Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984); Albertson v. T.J. Stevenson & Co., Inc., 749 F.2d 223, 228 (5th Cir. 1984); Davidson & Jones Development Co. v. Elmore Development Co., 921 F.2d 1343, 1352 (6th Cir. 1991); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1297 (7th Cir. 1993); Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1365-1366 (8th Cir. 1983); Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991); Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986); Tippens v. Celotex Corp., 805 F.2d 949, 953-954 (11th Cir. 1986); Pyramid Securities Ltd. V. IB Resolution, Inc., 924 F.2d 1114, 1123 (D.C. Cir.), *cert. denied*, 502 U.S. 822, 112 S. Ct. 85 (1991); Sinskey v. Pharmacia Opthalmics, Inc., 982 F.2d 494, 498 (Fed. Cir. 1992), *cert. denied*, 508 U.S. 912, 113 S. Ct. 2346 (1993)."A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984). For this reason, the information regarding assets and liabilities in the debtor's affidavit and accompanying attachment does not constitute new evidence or new argument that prevents the court from applying the law of the case doctrine.

Even if, assuming *arguendo*, the court did not apply the law of the case doctrine in this instance, the court finds that the trustee has met all necessary elements under N.C. Gen. Stat. § 39-24.5. The trustee must show: (1) the existence of a creditor whose claim arose before the transfer was made or the obligation was incurred; (2) the debtor made the transfer or incurred the obligation without receiving a reasonably

9

equivalent value in exchange for the transfer or obligation; and (3) the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Addressing the first element, Watts' claim arose when she invested in the sale-leaseback scheme, and that occurred prior to the transfer of the Miller Road Property. N.C. Gen. Stat. § 78A-56(a) states that a person who offers or sells a security in violation of the registration requirements of the North Carolina Securities Act, which includes §§ 78A-24 and 78A-36(a), is liable to the person purchasing the security from him. On December 27, 2002, Cabarrus County Superior Court Judge Clarence E. Horton, Jr., entered a judgment granting Watts' summary judgment on her first and second claims for relief: (1) that Sharon Slough sold unregistered securities, pursuant to § 78A-24; and (2) that Sharon Slough operated as an unlicensed securities salesman or securities dealer, pursuant to § 78A-36(a). The right to sue for liability arises from the time of the illegal sale, as the two-year statute of limitations for violations under §§ 78A-24 and 78A-36(a) is triggered from "the sale or contract of sale." N.C. Gen. Stat. § 78A-56(f). On May 17, 2000, Watts invested $243,000.00 in GTS telephone switch equipment through Sharon Slough. On May 23, 2001, Sharon Slough transferred the Miller Road Property to her two sons. Watts' claim arose at the time of the sale—more than a year before the transfer of the subject property.

Next, the evidence clearly shows that the debtor made the transfer of the Miller Road Property without receiving a reasonably equivalent value in exchange for the transfer. On May 23, 2001, Sharon Slough executed a deed to the Miller Road Property to her two sons, Brian K. Sheets and Jeffery L. Sheets. The sons helped their late father construct the home on the property. However, the record does not support that the sons helped with the construction as a bargained-for exchange for the future transfer of the property to their names. In fact, the deed expressly states that the transfer was made "for valuable

10

consideration of five and 00/100ths ($5.00) Dollars, love and affection." In her interrogatory responses, the debtor conceded that no actual monetary consideration was paid by the sons at the time of the transfer. Moreover, the record reflects that Sharon and Stephen Slough continued to pay the mortgage, insurance, and taxes on the Miller Road Property out of their joint checking account. Under North Carolina law, "where a deed transferring property may have been executed to defraud a creditor, valuable consideration must be a fair and reasonable price." Estate of Graham v. Morrison, 607 S.E.2d 295, 299 (N.C. App. 2005); North Carolina Nat. Bank v. Evans, 296 N.C. 374, 378, 250 S.E.2d 231, 234 (N.C. 1979). Here, no valuable consideration was paid for the transfer of property.

Finally, the evidence supports that the debtor became insolvent as a result of the transfer. Under the Uniform Fraudulent Transfer Act, "a debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." N.C. Gen. Stat. § 39-23.3(a). The trustee provided the court with an itemized breakdown of assets and liabilities based upon the debtor's October 1, 2003 deposition and answers to interrogatories. The analysis indicates that the debtor had a net worth of $78,955.00 prior to the transfer and a net worth of -$145,975.00 after the transfer. As noted above, the court finds that the information contained in Sharon Slough's affidavit regarding the valuation of assets and liabilities contradicts the information provided in her deposition testimony and interrogatory responses. No explanation was provided in the affidavit to resolve the disparity. It, therefore, will not be considered by this court as creating a genuine issue of material fact as to the debtor's insolvency. *See* Barwick, 736 F.2d at 960.

The court notes that the valuation based upon the debtor's deposition and interrogatory responses actually provides a conservative assessment of the debtor's liabilities at the time of the subject transfer. The valuation lists Watts as the debtor's sole creditor resulting from the sale of unregistered securities.

11

However, it is clear from the record that Watts was not Sharon Slough's only client. Sharon Slough also sold ETS payphones to clients who then leased them back to the promoter. At her deposition on October 9, 2002, Slough stated that she sold payphones to "a lot" of people and that a fair estimation was between 100 and 200 people since 1997. This type of sale-leaseback investment in payphones has been deemed a "security" by the US Supreme Court subject to enforcement under applicable securities laws. S.E.C. v. Edwards, 540 U.S. 389, 397 (2004). Thus, the valuation based upon the debtor's deposition and interrogatory responses is actually generous to the debtor, as it fails to account for other individuals who may have had claims against the debtor for the sale of unregistered securities at the time of the subject transfer.

As for the subsequent transfer of property from Brian K. Sheets and Jeffery L. Sheets to Stephen Slough, as trustee, it is voidable. A creditor may obtain a judgment against "any subsequent transferee other than a good-faith transferee who took for value or from any subsequent transferee." N.C. Gen. Stat. § 39-23.8(b). The evidence supports that no valuable consideration was received for the transfer of the Miller Road Property from Sharon Slough to her sons or from her sons to Stephen Slough, as trustee.

For the foregoing reasons, the court grants the trustee's motion on the fraudulent transfer claim, pursuant to N.C. Gen. Stat. § 39-23.5, based upon the law of the case doctrine. Alternatively, the court finds that the trustee meets all elements under § 39-23.5 for summary judgment.

### Fraudulent Transfer Claim  (Adversary Proceeding No. L-04-00015-8-JRL)

In the case transferred from Brunswick County, the court addresses the Trustee's motion for summary judgment on the fraudulent transfer claim, pursuant to N.C. Gen. Stat. §§ 39-23.5. The trustee fails to show undisputed facts supporting the second statutory element—that "the debtor made the transfer

or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation." The debtor held a 50% ownership interest in the Verandas Condominium. Prior to April 16, 2001, the debtor's mother held the remaining 50% ownership interest. Thereafter, the debtor and her mother executed a deed to the Verandas Condominium in the name of the debtor and Stephen Slough. Unlike North Carolina, South Carolina does not recognize tenancy by the entireties. Davis v. Davis, 223 S.C. 182, 75 S.E.2d 46, 55-56 (S.C. 1953). The debtor and Stephen Slough each held a 50% ownership interest in the Verandas Condominium. The debtor and Stephen Slough financed the purchase of the Sea Trail Plantation Property with a loan secured by the Verandas Condominium. Thus, the debtor used her 50% ownership interest in the South Carolina property to purchase the North Carolina property that she owns with her husband as tenants by the entireties. There is no evidence that the debtor failed to receive a reasonably equivalent value for the subject transfer.

The trustee also moves for summary judgment under N.C. Gen. Stat. § 39-23.4, which prohibits transfers made with the intent to hinder, delay or defraud any creditor of the debtor. Looking at the facts in the light most favorable to the non-moving party, the court finds that there are issues of material fact regarding the intent of the debtor that prevents entry of summary judgment under that statutory provision.

For the foregoing reasons, the court denies the trustee's motion for summary judgment on the fraudulent transfer claim under both §§ 39-23.5 and 39-23.4.

## **CONCLUSION**

In Adversary Proceeding No. L-04-00158-8-JRL, the court grants the trustee's motion for summary judgment on the eighth claim for relief—the fraudulent transfer claim, pursuant to § 39-23.5. The court notes that claims 3, 5, and 6 remain to be adjudicated. It is not clear whether in the settlement of the

Securities Act claims, which is yet unfiled, Watts abandons her remaining claims. If she does, the court will enter judgment in this case. Bankr. Rule 7054(a); Fed. R. Civ. P. 54(b). In Adversary Proceeding No. L-04-00015-8-JRL, the court denies the trustee's motion for summary judgment on the fraudulent transfer claim under N.C. Gen. Stat. §§ 39-23.5 and 39-23.4.

**So Ordered.**

**Dated: August 25, 2005**

*/s/ J. Rich Leonard*
J. Rich Leonard
United States Bankruptcy Judge